IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-159-FL-KS

TANIKA LYNETTE BRYANT,　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　Plaintiff,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　**ORDER and**
　　v.　　　　　　　　　　　　　　　　)　　**MEMORANDUM &**
　　　　　　　　　　　　　　　　　　　)　　**RECOMMENDATION**
LIVING WITH AUTISM, INC.,　　　　　　)
CATHY NEWTON, Executive Director,　　)
PHANISIA (LNU), Staff Member, and　　 )
HENNA ELLIS, CEO,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　Defendants.　　　　　　　　　　　)

This pro se case is before the court on the application [DE #2] by Plaintiff Tanika Lynnette Bryant to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a)(1) and for frivolity review pursuant to 28 U.S.C. § 1915(e)(2)(B), the matter having been referred to the undersigned by United States District Judge Louise W. Flanagan. For the reasons set forth below, the court allows Plaintiff's request to proceed in forma pauperis and recommends that Plaintiff's complaint be dismissed in its entirety.

## IFP MOTION

The standard for determining in forma pauperis status is whether "one cannot because of his poverty pay or give security for the costs . . . and still be able to provide himself and dependents with the necessities of life." *Adkins v. E.I. DuPont de*

*Nemours & Co.*, 335 U.S. 331, 339 (1948). Based on the information contained in the application, Plaintiff's application to proceed without prepayment of costs is allowed.

## DISCUSSION

### I. Background

From January 5, 2024, until January 15, 2024, Plaintiff was employed as a Professional Care Specialist with Living with Autism, Inc. (Am. Compl. Ex. 6 [DE #5-6] at 2–3, Ex. 7 [DE #5-7] at 1.) On March 12, 2024, Plaintiff brought this action alleging she had been discriminated against in her employment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") based upon her color, race, and religion. Plaintiff's operative complaint[1] names Living with Autism, Inc., and three individuals employed by Living with Autism, Inc., as defendants. (Am. Compl.) Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") (EEOC Charge [DE #5-1]) and was issued a notice of right to sue on February 22, 2024 (Notice Right Sue [DE #5-9].)

Construed liberally, Plaintiff's complaint appears to allege that she was constructively discharged from employment following an incident with the Executive Director concerning Plaintiff's response to an autistic client's statement that Plaintiff should go back to Jerusalem. According to Plaintiff, the client made the statement while pointing to Plaintiff's headwear, and Plaintiff responded by saying something

---

[1] Plaintiff initiated this action upon filing a complaint on March 12, 2024. (Compl. [DE #1].) Plaintiff filed an amended complaint on April 9, 2024. (Am. Compl. [DE #5].)

2

to the effect of "[Oh], Lord Jesus, I might have to take this bonnet off."[2] (Am. Compl. Ex. 7 [DE #5-7] at 1.) Plaintiff states the Executive Director told her not to speak to the client in that manner and an altercation then ensued. Plaintiff alleges she was told to go home – that she was fired. (Am. Compl. Ex. 5 at 1.) In an email to Human Resources, Plaintiff recounted the events as follows:

> So today, around 11:30 I was going to warm up Parke food while he was still taking a nap but being that somebody else was already sitting i let him and his clinet eat first then i will come back as im standing there cathy clinet came over to me pointing talking about my headscarf i jerusalem he dont like them i didnt say anything until he came back i said oh no im sorry i must look different with this on he walked away i found it funny outta nowhere cathy yelling shouting talking about oh no you dont talk to my client like that im looking confused like what did is something wrong she said yeah who do you think you are talking to him like that im like i didnt say anything out the way i asked her to [illegible] face saying you dont know who i am go home get out our fired im like what you might need a break i asked you to get outta my face step ba[ck] to the office i then said dont talk to me like that im grown your grown im not going in the office with you right now and your mad for no reas[on] what was going on she asked me to come in the office with her to tell her what was going on as i was doing that cathy come back in there i think i am coming in here trying to change things i dont run nothing my options are not need i said hold on she cut me off all you been doi[ng] looked her and said what are you talking about i wont complaining im was asking questions your speaking on something you dont know wh mary about somethings like whats wrong with you did you build this you dont know who i am and i said if you hold a position high asking an be carrying yourself in this matter this is my palce this is my building i walked away went outside i came back inside talking to tamikia cathy from talking talking about you people come in here taking to take over why you dent have your own place I told her because i dont want one know who i am im over you i can say and do what i want your fired i said for what she called out two things i said thats a lies how could you intimidated about how i carry myself and how i work with the knowledge i have i come to work to work

---

[2] In an email to Human Resources, Plaintiff states she said "[O]h no [I']m sorry I must look different with this on," at which point the client walked away. (Am. Compl. Ex. 5 [DE #5-5] at 1.)

3

> she then said and point at me up and you this i asked her what she mean by calling me this i have a name and i am somebody at this point tamika said this need to stop cathy sa[y] tomesha tum to her and said no she dont cathy then say i have no right to talk or express my opinions while im there we left out i went to w american females over one was real big tall and very dark and the other one was skinny with a red wig on cathy told her to tell me to leave role there she tell me its none of my business this is cathy building she told you to leave you are now trespassing the other one was telling to go get my bag and my cup cathy then jump back in my face i told her to get outta my face for the last time she then hit her body agents [ ] things the skinny came out behind as i was going out the door and said i dont care i dont got nothing to do with it i said im not scared nobo[dy] me she then said thats why your ass got walked outta here i told her to go one leave me alone she walking to her car yelling she dont want purse i stood there she was still talking so now you threatened my life ok she standing there got something outta her car and open the bac[k] phone about me i dont know the other lady that was outside she was saying something to her if anything would've happen to me cathy is [ ] memebers involved now this is a big problem. , I'm fired, I'm fired get out, get out, I mean, just howling and screaming, not thinking about th[e] for screaming. That's not okay, and then too. You have these clients in here that you could be triggering. You're not even thinking about the[m] how she was speaking to me and the things she was saying I was being racially profiled by her saying you people, and then she's pointing here. I'm asking, what do you mean this right here? I have a name. It's not this right here so as I proceed to walk out. She's steady talking. she put a paper on the water machine and said you can write anything that you want on that paper. I turned away from her. Tanika Bryant

(Am. Compl. Ex. 5 at 1.)

Plaintiff alleges she was later told to come back to work and arrived at work on January 26, 2024. (Am. Compl. Ex. 5 at 2.) Though not entirely clear, it appears Plaintiff did not enter the building because the Executive Director was there and was "not ready for [Plaintiff] to come back." (*Id.* ("[J]azz made a call to hr to see what was

4

going on or whats theh next step just for kathy to say she not ready for me to come back in the building . . . .").)

## II. Standard for Frivolity Review

Notwithstanding the determination that Plaintiff is entitled to IFP status, the court is required to dismiss all or part of an action found to be frivolous or malicious, which fails to state a claim on which relief can be granted, or which seeks money damages from a defendant immune from such recovery. 28 U.S.C. § 1915(e)(2)(B); *Michau v. Charleston County*, 434 F.3d 725, 728 (4th Cir. 2006). A case is frivolous if it lacks an arguable basis in either law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Pro se complaints are entitled to a more liberal treatment than pleadings drafted by lawyers. *See White v. White*, 886 F.2d 721, 722–23 (4th Cir. 1989). However, the court is not required to accept a pro se plaintiff's contentions as true. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). The court is permitted to "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327. In making the "inherently elastic" frivolity determination, *Nagy v. FMC Butner*, 376 F.3d 252, 256–57 (4th Cir. 2004), the court may "apply common sense," *Nasim v. Warden., Md. House of Correction*, 64 F.3d 951, 954 (4th Cir. 1995).

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to give a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must give a defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550

5

U.S. 544, 555 (2007). A complaint is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original) (internal quotation marks omitted). "A plaintiff must offer more detail . . . than the bald statement that he has a valid claim of some type against the defendant." *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001); *see also White*, 886 F.2d at 723 (affirming district court's dismissal of suit as frivolous where complaint "failed to contain any factual allegations tending to support [plaintiff's] bare assertion"). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. While the court must read the complaint carefully to determine if the plaintiff has alleged facts sufficient to support her claims, *White*, 886 F.2d at 724, the court is not required to act as the pro se plaintiff's advocate or to parse through volumes of documents or discursive arguments in an attempt to discern the plaintiff's unexpressed intent, *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013).

### III. Analysis of Plaintiff's Claims

#### A. Title VII Claims

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-

2(a)(1). A plaintiff can establish a Title VII discrimination violation by demonstrating through direct evidence that illegal discrimination motivated an employer's adverse employment action or by proceeding under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Cherry v. Elizabeth City State Univ.*, 147 F. Supp. 3d 414, 421 (E.D.N.C. 2015) (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc)). "Direct evidence is evidence from which no inference [of discrimination] is required." *Cherry*, 147 F. Supp. 3d at 421. "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)).

To state a claim for discriminatory discharge under Title VII, a plaintiff must plead facts sufficient to support a finding that she was terminated *because* of her race, color, religion, sex, or national origin. Allegations that are simply consistent with discrimination do not suffice. *See McCleary-Evans v. Md. Dep't Transp.*, 780 F.3d 582, 586 (4th Cir. 2015) (concluding that complaint "stop[ped] short of the line between possibility and plausibility of entitlement to relief" where the factual allegations were "consistent with discrimination" but did not "alone support a reasonable inference that the decisionmakers were motivated by" unlawful discrimination).

1. Individual Claims

Plaintiff purports to assert Title VII claims against several individuals employed with Living with Autism, Inc.: Henna Ellis, CEO; Cathy Newton, Executive Director; and a staff member with the first name Phanisia. Individuals cannot be found liable under Title VII. *See Lissau v. S. Food. Serv., Inc.*, 159 F.3d 177, 180–81 (4th Cir. 1998). Accordingly, these claims should be dismissed as frivolous or for failure to state a claim upon which relief can be granted.

2. Employer Claims

Plaintiff's Title VII claims against Living with Autism, Inc., also fail. Plaintiff's complaint contains no factual allegations from which it could plausibly be inferred that she was discharged (actually or constructively) because of her race, color, or religion. Rather, her claims are premised upon conclusory statements of discrimination, which are insufficient to survive review under 28 U.S.C. § 1915(e)(2)(B). *See Trulock*, 275 F.3d at 405; *White*, 886 F.2d at 723.

As to the claims for race and color discrimination, it appears as though Plaintiff identifies herself as Black or African American.[3] All of Plaintiff's claims center

---

[3] Plaintiff's original complaint listed her race as "Black." (Compl. at 3). That complaint was superseded by Plaintiff's amended complaint. *See Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017) ("Because a properly filed amended complaint supersedes the original one and becomes the operative complaint in the case, it renders the original complaint 'of no effect.'" (quoting *Young v. City of Mt. Ranier*, 238 F.3d 567, 573 (4th Cir. 2001))). While Plaintiff's amended complaint does not identify Plaintiff's race or color, exhibits to the amended complaint variously describe her as "Black or African American" (Am. Compl. Ex. 6 at 2–3, 10), "Color: Brown, Race Biracial" (Am. Compl. Ex. 7 at 1), and Bi-Racial/Multi-Racial (Am. Compl. Ex. 6 at 10).

around her conflict with the Executive Director, Cathy Newton. (Am. Compl. Ex. 6 at 2.) While Plaintiff claims Cathy made reference to "'you' people want[ing] to take over," no facts are alleged to suggest that statement was race- or color-based. (*Id.*) The only other evidence of alleged race or color discrimination involves a derogatory statement by a co-worker whose employment has since been terminated. (*Id.* at 3 (claiming "another employee came out of the building saying 'get your black ass out of here'" and that "this employee has since been terminated".) If anything, Plaintiff's allegations suggest that racially derogatory statements are not tolerated in the workplace. Plaintiff alleges no facts to support an inference that she was treated differently because of her race or color. See *McCleary-Evans*, 780 F.3d at 586. Therefore, her Title VII race and color discrimination claims should be dismissed.

As to her religious discrimination claim, Plaintiff has not included any facts indicating what her religion is (*see* Am. Compl. Ex. 7 at 1 (listing Plaintiff's religion as "not a certain one"); Am. Compl. Ex. 6 at 10 ("Religion – Not a Certain Religion")) or suggesting that she was discharged (constructively or actually) due to her religion. Rather, the operative complaint suggests that the Executive Director reprimanded Plaintiff for Plaintiff's response to a client under the facility's care, that an altercation ensued, and that the Executive Director believed Plaintiff was insubordinate in her actions toward management.

Plaintiff has failed to allege sufficient facts to support a Title VII claim of race, color, or religious discrimination. Accordingly, her Title VII claims should be dismissed.

9

Case 5:24-cv-00159-FL    Document 6    Filed 11/19/24    Page 9 of 11

### B. First, Fourth, and Fourteenth Amendment Claims

Plaintiff also asserts violations of her First Amendment rights to freedom of speech and religion, as well as her Fourth and Fourteenth Amendment rights. (Am. Compl. at 3.) Such claims are not cognizable. The First Amendment does not regulate the conduct of private employers, such as Living with Autism, Inc. *See Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 819 (4th Cir. 2004). Nor do the Fourth and Fourteenth Amendments. *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (Fourth Amendment); *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982) ("[T]he Fourteenth Amendment, which prohibits the states from denying federal constitutional rights and which guarantees due process, applies to acts of the states, not to acts of private persons or entities."). These claims should therefore be dismissed.

### CONCLUSION

For the reasons stated above, Plaintiff's application to proceed in forma pauperis [DE #2] is ALLOWED and it is RECOMMENDED that Plaintiff's complaint, as amended, be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) as frivolous or for failure to state a claim upon which relief can be granted.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on Plaintiff. Plaintiff is hereby advised as follows:

You shall have until **December 3, 2024**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the

Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b) (E.D.N.C. May 2023).

If you do not file written objections to the Memorandum and Recommendation by the foregoing deadline, you will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, your failure to file written objections by the foregoing deadline may bar you from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

This 19th day of November 2024.

_____
KIMBERLY A. SWANK
United States Magistrate Judge